IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS AND KARA CAPRIOTTI | : | CIVIL ACTION |
| | : | NO. 11-7779 |
| v. | : | |
| | : | |
| ALLSTATE PROPERTY AND | : | |
| CASUALTY INSURANCE COMPANY | : | |
| d/b/a ALLSTATE | : | |

O'NEILL, J. SEPTEMBER 6, 2012

**MEMORANDUM**

Plaintiffs Nicholas and Kara Capriotti seek damages, attorney fees and other relief based on claims of breach of contract and bad faith against defendant Allstate. Defendant has filed a motion for summary judgment. Also before me are plaintiffs' response to the motion and defendant's reply. For the reasons that follow I will grant in part and deny in part defendant's motion.

**BACKGROUND**

The Capriottis were insured under a homeowners insurance policy issued by Allstate. Dkt. No. 4-1 at ECF p. 2. The policy covered "sudden and accidental direct physical loss to property." Id. at ECF p. 9. The policy excluded coverage for loss caused by "seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years" from plumbing. Id. at ECF p. 16. The policy further excluded coverage for loss caused by "wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect" or by "rust or other corrosion." Id.

The loss at issue in this case is water damage to the Capriottis' basement, which plaintiffs used every day. N. Capriotti Dep. at 19:25-20:3. Nicholas Capriotti testified that he discovered

that the carpet in his basement was saturated with water and contacted Jamison Basement Waterproofing within "a couple days." Id. at 23:4-10. He could not recall the exact date he noticed his carpet was wet, id. at 18:24-19:2, but a Jamison record indicating a scheduled appointment with the Capriottis is dated September 1. Dkt. No. 19-8. Allstate's records show that plaintiffs subsequently notified Allstate of water damage to their home on September 26, 2011. Dkt. No. 17-13 at ECF p. 2. That same day, a plumber conducted an inspection and discovered a "break" in a pipe under plaintiffs' home. Dkt. No. 19-9.

Nicholas Capriotti also testified that he believed that water caused a portion of his basement wall to rot. While inspecting the wall he "poked [his] finger . . . to see what was the problem with the wall and [his] finger went through the wall." N. Capriotti Dep. at 87:4-6. Capriotti described the wall material as "some sort of masonry." Id. at 87:22-23. He could not recall the date he punctured the wall with his finger. Id. at 88:6-8.

Allstate claims adjuster Louis Mincarelli handled plaintiffs' claim. His claim notes show that on September 26, before he had inspected plaintiffs' home, he wrote that a sewer line under plaintiffs home broke "and has been gradually leaking overtime [sic]." Dkt. No. 19-10 at ECF p. 1. Mincarelli subsequently inspected plaintiffs' home on October 10. Id. at ECF p. 5. Nicholas Capriotti testified that between September 26 and October 10 there was "continuous damage" to his home. N. Capriotti Dep. at 75:5. Mincarelli's inspection notes state that "the walls show damage from long term deterioration, the carpet tack slips are black and show signs of rot." Dkt. No. 19-10 at ECF p. 5. At his deposition Mincarelli admitted that although he personally inspected the damage, he did not personally inspect the cause of the leak and instead relied on plumbers' reports. Mincarelli Dep. at 29:19-30:1 He could not pinpoint exactly how long water

had been leaking from the pipe, but he testified that "the evidence shows that it was more than one week, more than two weeks, probably more than a few months." Id. at 25:4-7. Mincarelli based his conclusion on the rot in plaintiffs' basement wall and the discoloration in their carpet tack strips. Id. at 25:14-20. Ultimately, Allstate denied plaintiffs' claim on the grounds that plaintiffs' loss was not "sudden." Dkt. No. 17-3 at ECF p. 17. Allstate further concluded that the policy exclusions for "seepage," "wear and tear" and "rust or other corrosion" applied. Id. at pp. 17-18.

The Capriottis, however, contend that the damage was caused by a sudden break in the pipe and they now bring two claims based on defendant's denial of coverage. First, plaintiffs contend that the "actions and/or omissions of Defendant constitutes [sic] bad faith" pursuant to 42 Pa. Cons. Stat. § 8371. Am. Compl. ¶ 24. Second, plaintiffs aver that Allstate breached their contract. Id. ¶ 29.

**STANDARD OF REVIEW**

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23. If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

### I. Breach of Contract Claim

Allstate moves for summary judgment with respect to the Capriottis' breach of contract claim. To establish a claim for breach of contract under Pennsylvania law, plaintiffs must demonstrate that "there was a contract, the defendant breached it, and plaintiffs suffered damages from the breach." McShea v. City of Phila., 995 A.2d 334, 340 (Pa. 2010). In this case the parties dispute whether Allstate breached a duty imposed by the language in the homeowners policy stating that Allstate "will cover sudden and accidental direct physical loss to property."

Dkt. No. 4-1 at ECF p. 9.

The interpretation of the language of an insurance contract is a question of law that is decided by the court. Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997). "Where the provision of the policy is ambiguous, the policy provision is construed in favor of the insured and against the insurer, the drafter of the instrument. If the policy language is clear and unambiguous, we give effect to the language of the contract." Bateman v. Motorists Mut. Ins. Co., 590 A.2d 281, 283 (Pa. 1991).

Allstate contends that the rot in the Capriottis' wall and the discoloration of their carpet tack slips show that plaintiffs' loss was gradual, not sudden. In its motion for summary judgment Allstate advances the Pennsylvania Superior Court's definition of "sudden" in Lower Paxton Township v. U.S. Fidelity & Guaranty Co., 557 A.2d 393 (Pa. Super. Ct. 1989). The Lower Paxton Court considered policy that used the language "sudden and accidental," like the policy at issue in the present matter. The Court explained that

> [r]eading "sudden" in its context, i.e. joined by the word "and" to the word "accident," the inescapable conclusion is that "sudden," even if including the concept of unexpectedness, also adds an additional element because "unexpectedness" is already expressed by "accident." This additional element is the temporal meaning of sudden, i.e. abruptness or brevity. To define sudden as meaning only unexpected or unintended, and therefore as a mere restatement of accidental, would render the suddenness requirement mere surplusage.

Id. at 402. Plaintiffs do not challenge Allstate's proposed definition of "sudden," nor do they argue that the policy is ambiguous. Instead, the Capriottis argue that their loss is sudden because they "discovered the water saturation on the carpeting of the basement floor after not noticing any water infiltration prior to that day." Dkt. No. 19 at ECF p. 13.

I conclude that there is a genuine issue of material fact as to whether the Capriottis' loss was sudden. The rot in the wall and the staining of the carpet tack slips suggests gradual water damage. On the other hand, Nicholas Capriotti testified that his family used their basement on a daily basis and that one day he discovered that the basement carpet was saturated with water, which suggests that the water damage to their home was in fact sudden. Additionally, Mincarelli did not observe the discolored carpet tack slips until approximately one month after Nicholas Capriotti noticed his carpet was drenched. A reasonable jury could conclude that the Capriottis suffered sudden property damage in early September and that the carpet tack slips became discolored between then and October 10, the date of Mincarelli's inspection. I will therefore deny Allstate's motion for summary judgment with respect to the Capriottis' breach of contract claim.

## II. Bad Faith Claim

Allstate also seeks summary judgment on plaintiffs' bad faith claim. Pennsylvania provides a statutory remedy for bad faith in insurance policy actions. 42 Pa. Cons. Stat. § 8371. Although the statute does not define bad faith in an insurer's decision not to pay a claim, the Pennsylvania Superior Court has explained that "such conduct imports a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994). Thus, a plaintiff alleging bad faith must demonstrate "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997). The burden of proof on a bad faith

claim requires that a plaintiff establish these elements by "clear and convincing evidence." Terletsky, 649 A.2d at 688.

I will grant Allstate's motion with respect to the Capriottis' bad faith claim because a reasonable jury could not find that plaintiffs established by clear and convincing evidence that Allstate lacked a reasonable basis for denying their claim. Allstate denied the Capriottis' claim only after conducting an in-person inspection of their home. Allstate's inspector observed wall rot and discolored carpet tack slips, both of which suggest gradual, not sudden, damage. Allstate therefore had a reasonable basis for denying the Capriottis' claim. See El Bor Corp. v. Fireman's Fund Ins. Co., 787 F. Supp. 2d 341, 349-50 (E.D. Pa. 2011) (applying Pennsylvania law and granting insurer's motion for summary judgment on bad faith claim where insurer had "reasonable grounds" for denying benefits). Accordingly, I will grant defendant's motion as to plaintiffs' bad faith claim.

An appropriate Order follows.